**244 A.2d 837.**

STATE *vs.* ALVA C. NORDSTROM.

AUGUST 9, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

472

KELLEHER, J. The defendant was convicted by a superior court jury of committing an indecent assault upon a child under the age of 13 in violation of G. L. 1956, §11-37-6. The trial justice denied the defendant's motion for a new trial and sentenced him to serve 30 months in the adult correctional institutions. The case is before us on several exceptions taken by the defendant to certain evidentiary rulings during the trial and to the denial of his motion for a new trial.

The child involved in the alleged assault was a five-and-one-half-year-old girl whom for the purposes of this decision we shall call "Ann."[1] She and her eight-year-old mentally retarded brother lived in a multi-family house in Woonsocket. The defendant was a tenant in the building. Some of his children were playmates of Ann. On August 24, 1964, at approximately 9:30 a.m., Ann and her brother left their tenement and went out to play in their backyard. About an hour later, Ann's mother looked out into the yard and noticed the absence of the children. The mother then sent another son and her father-in-law out to look for the children. The mother had no immediate fears about the children's disappearance because they had been known to wander off through the neighborhood on prior occasions.

---

[1] We are using the middle name of the victim.

Finally, in midafternoon, she notified the Woonsocket police that her two children were missing. When the department's night platoon assembled for roll call, the officers were told to be on the lookout for Ann and her brother.

About 30 hours later, at approximately 3:30 p.m. on August 25, a Woonsocket policeman, Oscar J. Galipeau, noticed the two children on Bernon Street close to their home. His attention had been drawn to the boy who, the officer noted, was wearing socks but no shoes. He brought the missing duo to police headquarters and they were reunited with their mother within a matter of 15 minutes.

Upon seeing her mother, Ann ran up to her and began to cry. At the trial Ann's mother was permitted to testify about what her daughter had related to her upon their initial reunion at the police station. Using the graphically simple but tellingly descriptive language of her small daughter, the mother stated that Ann told her of being with "C. J.'s father" (defendant) since the prior day and of the horrifying experience she claimed to have undergone while in defendant's company. The trial justice also allowed Ann's mother to testify as to some of the unspeakably lecherous incidents of the sexual assault and battery of which her daughter complained in those first moments in which they were rejoined. In addition the mother stated that her daughter told her this episode occurred in a sandy area where there was a log with cans on it, a Coca-Cola cooler and a refrigerator. The mother said that when her daughter went out to play on August 24, she was wearing white underpants and a lightweight coverall which zippered up the front. When Ann was picked up by Officer Galipeau, she was dressed in a one-piece sunsuit and she was not wearing any underpants.

A Woonsocket policewoman who was present at the reunion of mother and daughter corroborated the statements made of the testimony of the mother relative to her daugh-

ter's statements. The officer described Ann's intermittent crying and sobbing as she told her mother of her experiences during the time she was with defendant. A physician told the court that he had examined Ann shortly after she had rejoined her mother. He said that the girl's hymen, although greatly irritated, was intact. The doctor described a ¾-inch tear he found in the floor of the vaginal canal and the dried blood he observed on Ann's thighs around the genitalia. There was evidence introduced to show that the assault was committed in Providence County.

The defendant took the stand and admitted that he had driven Ann and the brother in his station wagon to Uxbridge, Massachusetts, a town which is near Woonsocket. He said he had pulled the car off the road and fallen asleep. Although he concurred with the girl's statements to her mother that on the previous day he and the children had visited a go-cart track and a drive-in movie, he denied committing any improprieties with Ann. He attributed the overnight absence to the fact that he had been drinking and did not want to drive to Woonsocket in such a condition. He had left the children off near their home without making any effort to contact their parents and continued on stopping at several bars. He was apprehended later that evening.

There are three phases to defendant's appeal. He alleges that the superior court erred in permitting the mother and the policewoman to repeat in the courtroom the extrajudicial statements made by Ann in the station. Such testimony, he claims, not only was hearsay but it was also violative of the constitutional right of confrontation accorded him by the federal and our state constitutions. He also contends that the court erred in permitting testimony to be offered which demonstrated that the crime occurred in Burrillville and finally he urges that the superior court

'erred in not granting him a new trial. We find no merit in any of these contentions.

## The Admissibility of Ann's Statements

In considering the admissibility of the statements given by Ann to her mother in the Woonsocket police station we must determine if they can be properly classified as spontaneous utterances which are competent evidence under the res gestae exception to the rule barring hearsay testimony in the light of the lengthy interval of time that elapsed between defendant's dastardly act and Ann's first meeting with her mother. A subsidiary issue to this question is whether the fact that the trial justice would not allow Ann to testify would prohibit the use of the five-year-old's remarks to her mother.

We shall first consider the issue posed by the trial justice's refusal to allow Ann to testify. We need only point to the case of *Powell* v. *Gallivan*, 44 R. I. 453, 118 A. 769, where this court ruled that even though a child may be incompetent to testify because of its age, any statement it makes which qualifies as part of the res gestae may be properly admitted into evidence.

Long ago in *State* v. *Murphy*, 16 R. I. 528, 17 A. 998, we held that the elapsed time interval between the event and the statement is not to be deemed the controlling element in determining the competency of an alleged spontaneous statement. The time interval, we said, is but one factor to be weighed in considering whether the statement is to be admitted into evidence. 6 Wigmore, *Evidence* (3d ed.), §1750, p. 142, in discussing the length of interval between event and declaration says:

"* * * The utterance must have been *before there has been time to contrive and misrepresent, i.e.* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This

limitation is in practice the subject of most of the rulings.

"It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. The fallacy, formerly entertained by a few Courts, that the utterances must be strictly contemporaneous * * *, owes its origin to a mistaken application of the Verbal Act doctrine * * *."

Since no specific lapse of time or distance from the scene of a crime can be fixed as the rule in determining what amounts to a res gestae utterance, the test to be applied is whether from the facts of a particular case the statements were spontaneous or impulsive or whether they were the product of reflection and deliberation. We eschew any approach to this question which calls for a blind obedience to a clock and hour by hour count of the time that has transpired between the event and the declaration. The crucial question is whether from a consideration of all the facts the trial justice is satisfied the declarant was still laboring under the stress of the nervous excitement when, as in this case, she spoke. Since the question of admissibility depends upon the circumstances of each case, the application of the principles of res gestae should rest in the sound discretion of the trial justice.

The question before us then is whether Ann's description of defendant's indecent activities was the product of the exciting influence of the litigated act or was her story about defendant the result of Ann's premeditation and design. The girl's mother testified that when her daughter first saw her in the station, she ran into her arms and cried as she began to tell about defendant. As told by the mother, the five-and-one-half-year-old underwent a frightfully hideous and revolting experience which is uncommon and traumatically unique for a child of such tender years. From our review of the record we have no doubt that her statements

were an instinctive outpouring which resulted from Ann's overpowering emotional and shocking experience with defendant. Although the record shows no precise time schedule of defendant's activities, it is reasonable to conclude that the attack occurred in the early evening of August 24. During the ensuing time, the young children were constantly in defendant's company and they were, in a manner of speaking, his prisoners right up until the time he dropped them off the next day near their home. Such circumstances would naturally produce a state of mind of fear and apprehension notwithstanding the brief period of time the children were on the streets of Woonsocket when Officer Galipeau came by, picked them up and brought them to the station. Within minutes thereafter the mother was reunited with her daughter. When Ann saw her mother at the station, the young violated victim instinctively complained to the one person she could turn to for protection and solace. This was her first real opportunity to talk. Ann's tender years render impossible and improbable any argument that her statements at the station were a deliberate attempt to implicate defendant. In our opinion her statements amounted to spontaneous utterances and the trial justice properly received the challenged testimony into evidence.

The defendant's argument that the reception of Ann's statements denied him his constitutional right of confrontation needs little discussion. Here the spontaneous utterances of the victim of defendant's assault were admitted into evidence as a recognized exception to the hearsay rule. In *State* v. *Murphy, supra,* at 533, 17 A. 999, a contention similar to that espoused by defendant here was made and rejected. In allowing into evidence of the dying declaration of a murder victim this court said:

> "The defendant further contends that the admission of this evidence violates his constitutional right to be confronted by his witnesses. But this is not so. The

deceased is not the witness; nor are his statements, merely as statements, reproduced in evidence. What he said and did in natural consequences of the principal transaction becomes original evidence, concerning which the witnesses are produced."

In speaking of the constitutional right of confrontation it was observed in *State* v. *Waldron,* 16 R. I. 191, 14 A. 847, that the constitution does not affect the rules of evidence or determine what shall be admissible testimony against a defendant but that he is secured the right to confront the witnesses who may be presented to prove such matters as, according to the settled principles of law, can be considered competent evidence against him. The constitutional provisions for confrontation state a general right without enumerating the cases to which it is inapplicable and they cannot be used to exclude evidence which is introduced during a trial as a well-established exception to the hearsay rule. 5 Wigmore, *Evidence* (3d ed.), §1397, pp. 127, 131. The constitution guarantees a defendant the right to confront witnesses not victims. In urging that his federal constitutional right of confrontation has been violated, defendant cites *Pointer* v. *Texas,* 380 U. S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. An examination of the case shows that the Court recognized that well-established exceptions to the hearsay rule do not come within the confrontation mandate. The Supreme Court observed that previously in *Mattox* v. *United States,* 146 U. S. 140, 13 S. Ct. 50, 36 L.Ed. 917, it has recognized the rule permitting the admissibility of a dying declaration did not violate the right of confrontation and added that "Nothing we hold here is to the contrary." The court also added that there were analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of *witnesses.* Among such situations are spontaneous utterances similar to those made by Ann on August 25, 1964. We can see nothing in the opinion of the United States Supreme Court which

would change the long-standing principle that well-established exceptions to the hearsay rule do not come within any constitutional right of confrontation—be it state or federal.

### The Locus of the Assault

In his charge to the jury the trial justice instructed that one of the factors the state had to prove in this case was that the assault occurred in Providence County.

Since we have already ruled that the statements of Ann were properly received into evidence, that portion thereof in which she described the area where the assault occurred in conjunction with other testimony was relevant to show that the crime was committed in Burrillville which is a town in the County of Providence. Her mother said her daughter described the place where the assault occurred as a sandy area. According to Ann's statement to her mother, she was attacked in a sandy area where she saw a log with cans on it, a Coca-Cola cooler and a refrigerator. A Woonsocket detective testified that Ann accompanied him on the day following her return home as he drove throughout the neighboring towns looking for a place which matched the young lady's description. He said that they came upon a sandpit where he found the log and cans and adjacent thereto was a dump where the officer found a discarded cooler and refrigerator. Pictures were introduced into evidence which showed the various items enumerated by Ann. The chief of the Burrillville police department testified that the sandpit and dump were within the bounds of his town. In our opinion, the record contains competent evidence which could have justified the jury's finding that the crime occurred in Providence County.

### The Motion for a New Trial

In reviewing the trial justice's decision on the defendant's motion for a new trial, we are convinced that he exercised his own independent judgment of the record and he

480

neither overlooked nor misconceived any of the pertinent evidence in the case. We will, therefore, not disturb his approval of the jury's verdict.

The defendant's exceptions which have been briefed and argued are overruled, those neither briefed nor argued are deemed to have been waived and the case is remitted to the superior court.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff.

*Moses Kando,* Special Counsel for Public Defender, for defendant.