STATE

v.

Jeffrey MONDESIR.

No. 2004–300–C.A.

Supreme Court of Rhode Island.

Feb. 20, 2006.

Diane Daigle, for Plaintiff.

Paula Lynch, East Greenwich, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Jeffrey Mondesir, appeals conviction after a jury found him guilty of felony assault and possession of marijuana. As grounds for this appeal, Mondesir contends that the trial justice improperly denied his motion for judgment of acquittal and motion for a new trial. Mondesir further asserts that the trial justice erred in denying his motion to suppress from evidence a red T-shirt that was seized after he consented to a search of his home. He maintains that his consent to search was the product of unlawful police interrogation, and therefore the shirt should have been suppressed. Finally, Mondesir argues that he was prejudiced by the trial justice's denial of his motion to sever the possession charge from the assault charge. For the reasons set forth in this opinion, we deny the defendant's appeal and affirm the judgment of conviction.

## I

### Facts and Travel

In the early morning hours of July 15, 2001, a group of five young men, most of whom were recently graduated classmates, arrived at Mike Olson's home on Gertrude Avenue in Warwick, Rhode Island, after attending a party. There is little dispute that they had been drinking. At approximately 2:30 a.m., the men were joined by David Olson (Mike Olson's brother) and two of his friends.

When David Olson arrived at the house, he complained that a group of youths up the street had harassed him as he drove through the area. Upon hearing this, the

group of men decided to walk up the street to "see what the problem was."

Apparently fired up with liquor, they went looking for trouble and soon found it. Although witnesses at trial gave varied accounts of what happened next, it is not disputed that the group encountered another group of young men, which included Mondesir. A brawl ensued, during the course of which Mondesir struck Nicholas Cioe's head with a baseball bat, fracturing his skull. As a result of this incident, Mondesir was arrested and charged with felony assault and possession of marijuana.

At trial, the prosecution's case included testimony from David Poland, Michael Olson, Matthew Mittelsteadt, David Olson, and Nicholas Cioe—all of whom were among the revelers gathered at the Olson house before their encounter with Mondesir and his friends. Poland testified that neither he nor his friends were carrying any weapons as they walked up the street, and that when they arrived at the intersection of Gertrude and Stephens Avenues, they were encountered by a group of young men, which included Mondesir. Poland testified that Mondesir ran towards them with a bat and assaulted Cioe with it. This testimony was corroborated by Michael Olson, who further explained that, although no one in his group had any weapons, they did have "intentions of fighting if [a fight] occurred."

Matthew Mittelsteadt's testimony corroborated Poland's version of events. He added that after the assault on Cioe, a couple of his friends kicked and punched Mondesir, and that David Olson threw the bat into a nearby field. On cross-examination, Mittelsteadt admitted that in a statement to the police given three days after

the incident, he had claimed that he and his friends simply were walking around the neighborhood, even though they actually had ventured out to settle a dispute.

David Olson's version of events was similar to the testimony of the other prosecution witnesses. He testified that as he was driving home, a group of young men on Stephens Avenue yelled obscenities at him. He conceded that he and his friends left the house with the intention of fighting, but insisted that they did not have any weapons. He explained that as he and his friends approached the corner of Stephens and Gertrude Avenues, Mondesir came running towards them with a bat and struck Cioe in the head. After checking on Cioe, Olson picked up the bat and chased Mondesir with it. Olson explained that Mondesir got away, and that he tossed the bat away because he was afraid Mondesir would use it again. During his testimony, he admitted that some of his friends had yelled racial epithets at defendant after the assault, and that defendant was not the person who had harassed him earlier that evening. Olson also conceded that in his initial statement to the police he had misstated the conduct of the rival group.[1]

The complaining witness, Nicholas Cioe, was unable to recall the events surrounding the assault. He testified that after being hospitalized for thirteen days, he went to a rehabilitation hospital for six days, and continued with outpatient service from August to December. He also testified that as a result of his injuries, he had difficulties with fine motor skills, impulse control, and attention span, and that he was not able to return to his college until January 2002. He further stated

---

1. In his initial statement to the police, David Olson said that the group of assailants came running at his group with multiple baseball bats. On cross-examination at trial, he said

that the assailants were not running, that there was only one baseball bat, and some of the assailants had planks of wood.

that he continues to suffer from cognitive impairments and fatigue.

This testimony was consistent with the testimony of Dr. Gerhard Friehs, who said that when he examined Cioe on the morning of July 15, 2001, a CAT scan showed that he had a fractured skull and bone fragments. The scan also revealed blood in the area of the injury and a bruise to the brain. Because of these injuries, Dr. Friehs performed surgery immediately.

The prosecution also called members of the Warwick Police Department to testify. Sergeant John D'Alfonso said that when he arrived at the scene, Cioe's friends told him that a black male, wearing a red shirt, had attacked Cioe with a bat. Sergeant D'Alfonso retrieved the bat from a nearby field, but no other weapons were found. He then instructed Officer Ryan Sornberger and Det. Jeffrey McKnight to look for defendant, who was found lying atop the roof of a nearby house, but without the red shirt.

After the group of men identified Mondesir as the assailant, Det. McKnight arrested him. While performing a custodial search, he found a bag of marijuana. He advised defendant of his *Miranda* rights and transported him to police headquarters. After they arrived, Det. McKnight again advised him of his *Miranda* rights as he read from a preprinted form, at which point Mondesir indicated that he did not wish to make any further statements.

Later that day, and after Mondesir was transferred to the intake center at the Adult Correctional Institutions, Det. McKnight visited him and asked about the whereabouts of the red T-shirt he was wearing when he struck Cioe. After Mondesir asked about Cioe's condition, Det. McKnight again sought to obtain a statement from him.[2] The detective's persis-

tence was rewarded; defendant both made a statement about the previous night's events and signed a form consenting to a search of his home. That search led to the discovery of the elusive red shirt.

The defense presented three witnesses in its case: Officer Michael Sullivan; Mondesir's former roommate, John Katzenbach; and Travis Bentley, who was visiting a neighbor of Mondesir's when the fight occurred. Officer Sullivan's testimony revealed inconsistencies between Michael Olson's testimony and his statement to the police. The other two witnesses described a version of the events that was, not surprisingly, significantly different from the testimony of the state's witnesses. Indeed, they testified that Mondesir was not the assailant, but rather the victim in this case, and that he struck Cioe with the bat in self-defense.

Bentley testified that he saw a group of ten to fifteen people around Mondesir, with objects in their hands, including a bottle and a baseball bat. He said that a few of them began attacking Mondesir and shouting racial slurs at him. According to Bentley, it was Cioe who initially had the bat, and Mondesir punched him and took the bat in self-defense. Katzenbach also indicated that Mondesir was not the aggressor, and he added that he himself had also been assaulted by the other group of men.

After a trial in January 2003, the jury found Mondesir guilty of felony assault and possession of marijuana. He received a twenty-year sentence on the assault, with twelve years suspended, and a concurrent two-year suspended sentence for the drug possession charge. The defendant filed a timely appeal.

As grounds for appeal, defendant argues that the trial justice overlooked or miscon-

---

2. Detective McKnight testified that he again read defendant his *Miranda* rights.

ceived evidence when he denied his motions for judgment of acquittal and for new trial because the state failed to meet its burden in proving that he did not act in self-defense. Mondesir further contends that the consent to search his home was not valid because Det. McKnight requested his consent after he already had exercised his right to remain silent, and that the T-shirt found in his home should not have been admitted into evidence at trial. Finally, Mondesir maintains that the trial justice erred when he denied his motion to sever the possession charge from the assault charge, and that he was prejudiced as a result. We consider each of these arguments below.

## II

## Analysis

### A. Motion for Judgment of Acquittal

■ At the close of the state's case and again at the close of evidence, defendant moved for judgment of acquittal on the assault charge in accordance with Rule 29(a) of the Superior Court Rules of Criminal Procedure. Mondesir contends that the trial justice erred when he denied this motion because, according to defendant, the state failed to prove that he did not act in self-defense.

■ "When reviewing the denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice." *State v. Werner*, 851 A.2d 1093, 1110 (R.I.2004) (quoting *State v. Brown*, 798 A.2d 942, 950 (R.I.2002)). In ruling on a motion for judgment of acquittal, the trial justice must view the evidence in a light most favorable to the state without weighing the evidence or assessing witness credibility, and must draw all reasonable inferences that are consistent with guilt. *Id.* If the evidence, viewed in this light, is sufficient to support a verdict of guilty beyond a reasonable doubt, the motion must be denied. *Id.*

■ Mondesir maintains that because this case does not involve homicide he had no duty to retreat from the skirmish with Cioe, and that acquittal was warranted because the state's evidence was insufficient to establish that he did not act in self-defense. We agree with Mondesir to the extent that the state had a burden to rebut his claim of self-defense. *See State v. Hallenbeck*, 878 A.2d 992, 1012 (R.I. 2005). We do not agree, however, that the state's evidence was insufficient to meet this burden.

■ Under our well-settled law of self-defense, individuals who believe they are in "imminent peril of bodily harm can use such nondeadly force as is reasonably necessary in the circumstances to protect themselves." *State v. Martinez*, 652 A.2d 958, 961 (R.I.1995). However, in cases involving deadly force, a person has a duty to retreat if he or she is "consciously aware of an open, safe and available avenue of escape." *State v. Rieger*, 763 A.2d 997, 1003 (R.I.2001) (quoting *Martinez*, 652 A.2d at 961). Contrary to defendant's assertion, this duty is not limited to cases in which the victim actually dies; it arises in all cases involving deadly force. *See id.* at 1002–03; *State v. Guillemet*, 430 A.2d 1066, 1068–69 (R.I.1981).

The testimony at trial established that Mondesir struck Cioe in the head with an aluminum bat, fracturing his skull and leaving him unconscious for several days. This evidence was certainly sufficient to establish that Mondesir used deadly force, thereby giving rise to a duty to retreat. Yet, the evidence showed that Mondesir made no effort to retreat until after the assault, even though there was a safe avenue for him to do so. Indeed, defendant

quickly retreated from the scene after imparting the crushing blow to Cioe's head.

Mondesir's claim of self-defense is further undermined by the testimony of several witnesses who claimed that he was the initial aggressor. This Court previously has held that a defendant may not avail himself of self-defense under such circumstances. *Martinez*, 652 A.2d at 961. Therefore, viewing the testimony in a light most favorable to the state, it is clear that the trial justice correctly denied Mondesir's motion for judgment of acquittal.

### B. Motion for New Trial

■ The defendant next contends that the trial justice was "clearly wrong" in denying his motion for new trial, that he overlooked or misconceived material evidence, that the verdict was "against the law, against a fair preponderance of the evidence, and fails to do substantial justice between the parties." His argument parallels those concerning his motion for judgment of acquittal: namely, that the evidence did not support the verdict and that the state failed to rebut his claim of self-defense.

■ When considering a motion for new trial, a trial justice "has at least three analyses to perform." *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994) (citing *State v. Bertram*, 591 A.2d 14, 29 (R.I.1991)). First, "the trial justice must consider the evidence in light of the charge to the jury." *Id.* Second, "the trial justice must determine his or her own opinion of the evidence. The trial justice must then weigh the credibility of the witnesses and other evidence and choose which conflicting tes-

timony and evidence to accept and which to reject." *Id.* (citing *State v. Girouard*, 561 A.2d 882, 891 (R.I.1989)). Third, the trial justice must make "an individual assessment of the evidence" and determine whether he or she "would have reached a different result from that of the jury." *Id.* If the trial justice agrees with the jury's verdict, the verdict should be affirmed. *Id.*[3]

■ In ruling on a motion for new trial, "the trial justice need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this court to discern whether the justice has applied the appropriate standards." *State v. Otero*, 788 A.2d 469, 472 (R.I.2002) (quoting *Banach*, 648 A.2d at 1367). A trial justice's decision to grant or deny a motion for new trial " 'is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.' " *State v. Clark*, 603 A.2d 1094, 1096 (R.I.1992).

We are convinced, after applying this standard of review to the present case, that the trial justice properly denied Mondesir's motion for new trial. In issuing his bench decision, the justice gave a comprehensive recitation of the evidence presented at trial. Specifically, he described the version of events presented by the state's witnesses as "credible" and "worthy of belief." He also found that the state sufficiently had negated Mondesir's claim of self-defense, stating that Mondesir "was clearly the aggressor," and that he "acted without provocation." The trial justice went on to note that the severity of Cioe's

---

3. A fourth step is required if the trial justice does not agree with the jury's verdict. In such cases, "the trial justice must * * * determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice. If the verdict does meet

this standard, the trial justice may grant a new trial." *State v. Banach*, 648 A.2d 1363, 1367 n. 1 (R.I.1994). However, in cases when the evidence is so balanced that reasonable individuals could differ, the motion should be denied. *Id.*

injuries established that defendant had used deadly force, and that he failed to avail himself of a safe avenue of retreat. As noted above, these facts negate Mondesir's claim of self-defense. Therefore, we reject defendant's argument that the trial justice improperly denied his motion for new trial.

### C. Motion to Suppress

■ After his arrest on July 15, 2001, Mondesir exercised his right to remain silent while he was being detained at the Warwick police station. Later that day, however, Det. McKnight visited defendant at the Adult Correctional Institutions, where he questioned Mondesir and obtained consent to search his house. In a motion to suppress before trial, defendant successfully challenged the admissibility of statements that he made in response to Det. McKnight's questioning.

Several days into the trial, Mondesir made another motion to suppress, this time seeking to exclude from evidence the red T-shirt that Det. McKnight seized from his home after obtaining his consent to search. As grounds for this second motion, he argued that his consent to

search was the product of unlawful police interrogation and that therefore the shirt should be suppressed. The trial justice denied the motion. Although he indicated that he was not persuaded by the merits of defendant's argument, the basis for the trial justice's denial of the motion was that it was untimely.[4]

It is well established that motions to suppress evidence must be made and heard before trial. *State v. Francis*, 719. A.2d 858, 859 (R.I.1998). The rationale for this rule is that it allows the state an opportunity to appeal an adverse decision before jeopardy attaches which, in the case of a jury trial, occurs once the jury is empaneled and sworn.[5] *Id.* We agree with the trial justice's ruling, and see no reason to depart from our well-established rule requiring that motions to suppress take place before trial. We therefore reject defendant's argument.

### D. Motion to Sever

■ Mondesir's final assertion of error is that the trial justice abused his discretion when he denied his motion to sever the assault charge from the drug offense.[6]

---

4. The trial justice went on to note that even if defendant's motion had been timely raised, the motion would have been denied because "consent to search is not testimonial in nature, so certainly the Fifth Amendment privilege does not apply." He also noted that, even without Mondesir's consent, there was sufficient independent evidence, including witness statements, that would have led to discovery of the shirt. *See, e.g., State v. Firth*, 708 A.2d 526, 529 (R.I.1998) (noting "inevitable discovery" exception to exclusionary rule applies when unlawfully obtained evidence would have inevitably been discovered through lawful means); *State v. Trepanier*, 600 A.2d 1311, 1318 (R.I.1991) (holding motion to suppress was properly denied where independent sources would have inevitably led to discovery of evidence).

5. The defendant takes issue with the fact that the jury in this case was selected before the

trial justice ruled on his motion to suppress certain statements. Defense counsel argues that this hindered his questioning of the jurors on *voir dire* because he did not yet know whether the contested evidence would be submitted to the jury. This argument, however, bears no relationship to the untimeliness of his subsequent motion to suppress the shirt. In a pretrial proceeding, Det. McKnight testified that he had obtained Mondesir's consent to search after he had exercised his right to remain silent. This took place before the jury was sworn, thus allowing defense counsel ample opportunity to orally move for suppression of the shirt.

6. Mondesir initially sought to enter a plea of *nolo contendere* on the marijuana possession charge. However, the trial justice rejected this plea because defendant was unwilling to admit certain facts as true—apparently out of

He claims that this was prejudicial to his defense because the prosecution was able to portray the state's witnesses, including the victim, as "good kids," thereby bolstering their credibility.

Rule 8(a) of the Superior Court Rules of Criminal Procedure provides for the joinder of two or more offenses in the same indictment, information, or complaint if they are similar in character or "based on the same act or transaction." When two or more offenses are properly joined, a defendant may move nonetheless to sever if he is able to affirmatively show that trying the offenses together would result in substantial prejudice. Super. R.Crim. P. 14. However, severance of offenses is not a matter of right, and a decision to grant or deny a defendant's motion lies within the sound discretion of the trial justice. *State v. Martinez*, 774 A.2d 15, 18 (R.I.2001). In reviewing a trial justice's denial of a motion to sever, this Court will reverse only when a defendant has affirmatively shown that he has suffered a substantial prejudice, thereby impinging upon his right to a fair trial. *State v. King*, 693 A.2d 658, 663 (R.I.1997).

The drug offense in this case arose from a search that occurred when Mondesir was taken into custody for assaulting the victim. It is therefore beyond dispute that this offense was "based on the same transaction" as the assault charge. *See King*, 693 A.2d at 663 (holding joinder of assault charge and drug offense was proper because they arose from a single event). Thus, to succeed in his motion to sever, Mondesir was required to make an affirmative showing of substantial prejudice. *Id.* His conclusory allegations of prejudice fell far short of this requirement, and therefore we hold that the trial justice did

not abuse his discretion in denying the defendant's motion to sever.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

concern that the facts in question might incriminate him on the assault charge. The

trial justice's rejection of his plea is not contested on appeal.