## STATE

v.

## Angel MORALES.

No. 2005–70–C.A.

Supreme Court of Rhode Island.

April 18, 2006.

Diane Daigle, for Plaintiff.

Thomas Gulick, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

---

1. We shall use fictitious names when referring to minor persons throughout this opinion.

## OPINION

Justice ROBINSON for the Court.

The defendant, Angel Morales, appeals from a jury verdict finding him guilty of second-degree child molestation. As a result of this conviction, the defendant was sentenced to a term of fifteen years—two years to be served at the Adult Correctional Institutions and thirteen years suspended, with probation. Additionally, the defendant was ordered to register as a sex offender, to attend sex offender counseling, and to have no contact with the victim.

On appeal, defendant argues (1) that the trial justice was clearly wrong in admitting certain hearsay evidence under the excited utterance exception and (2) that the trial justice was clearly wrong in denying defendant's motion for a new trial.

This case came before the Supreme Court for oral argument on February 2, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument.

### Facts and Travel

On Friday, October 4, 2002, seven-year-old Jane[1] and her brother John traveled to Providence to spend the weekend at the home of their aunt, Ligna.[2] Upon arriving at their aunt's apartment, Jane and John played kickball and video games with their cousins. At some point that evening, defendant, who was Ligna's boyfriend, ar-

2. For the sake of clarity, we shall refer to Ligna and Pilar S. by their first names throughout this opinion.

rived at the apartment to spend the night with Ligna and their son. After dinner, everyone watched a movie in the living room; and during the movie Jane fell asleep. Her brother and her cousins also slept in the living room that night-all within an arm's length of where Jane was sleeping.[3]

According to Jane's testimony, at some point during that night, she awoke to find defendant touching her leg and her "private." Jane testified that, when she woke up, her pants and underwear had been pulled down to her shins. She testified that defendant touched her "private" for about fifteen to thirty seconds. Jane further testified that she did not scream because she did not want to awaken the others, but that she told defendant to stop "in a kind of loud voice." According to Jane's testimony, defendant did not stop touching her the first time she told him to stop; but, when she said it a second time, he stopped touching her and walked away. Jane testified that, after defendant walked away, she pulled up her pants and then stayed awake for about fifteen minutes to make sure that defendant was gone before she fell back to sleep. Jane also testified that none of the other children sleeping in the room woke up during this time.

The next morning, when Jane woke up, and after defendant had left for work, she went to her aunt's bedroom and asked to call her mother. When Ligna questioned Jane as to why she wanted to call her mother, Jane told her aunt that defendant had touched her. Jane testified that her aunt appeared "shocked" by what Jane had told her and then proceeded to call Jane's mother, Pilar.

Pilar testified that she was at work when she received the telephone call from her sister Ligna on October 5. Pilar further testified that, after speaking with Ligna, she spoke to Jane, who seemed frightened and who was crying. According to Pilar's testimony, Jane told her on the telephone that defendant had touched her in her private area between her legs. After speaking with her daughter, Pilar decided to drive from Boston, where she was working, to her sister's home in Providence.

Pilar testified that, when she arrived at Ligna's apartment, Jane looked sad and frightened. Pilar further testified that, when she asked Jane what had happened, Jane repeated what she had told her earlier in their phone conversation—namely, that defendant had touched her. According to Pilar's testimony, she and Jane then went outside and sat in her car to talk about what had happened. Pilar testified that Jane was crying while they were talking. When Pilar asked Jane to show her where defendant had touched her, Jane pointed to her vagina.

Further according to Pilar's testimony, defendant returned from work while she was at the apartment. Pilar testified that defendant denied having done anything, but also told her that he would get counseling and "do whatever he needed to do." Pilar testified that defendant then left the apartment, and her sister told her that he would not be coming back. Pilar further testified that she did not bring Jane home to Massachusetts with her that day because Jane wanted to go hiking with her aunt and the other children the next day.

At trial, defendant testified that he went to bed around 10 on the night of Friday, October 4, and did not get up until around 6 the next morning. The defendant fur-

---

**3.** According to the testimony of Ligna, four children slept in the living room that night: Jane, John, and their cousins Adam and Thomas. Ligna testified that Jane and Adam slept on a sofa bed and John and Thomas slept on the floor.

ther testified that he did not leave the bed where he and Ligna were sleeping for any reason during the night and that he did not touch Jane inappropriately on either October 4 or October 5. According to defendant's testimony, when he spoke with Pilar on October 5, he denied touching Jane. He also testified that he did not tell Pilar that he was going to attend counseling or apologize for what Jane claimed had happened. The defendant testified that he spent the night at Ligna's apartment on Saturday, October 5, and that Pilar was aware of that fact.

Jane's cousin, Thomas, testified that he also spent the night of October 4 at his aunt Ligna's apartment. Thomas testified that he slept in the living room that night, within an arm's length of where Jane was sleeping. According to Thomas's testimony, he did not wake up or hear any noises or voices during the night. Thomas further testified that Jane did not appear to be upset the next day.

Ligna testified at trial that neither she nor defendant got up during the night of October 4. According to Ligna's testimony, she knew that defendant had not gotten up from bed during that night because, to do so, he would have had to climb over her-which would have caused her to wake up. Ligna further testified that the next day, October 5, Jane "was fine" and never cried-even when she spoke to her mother on the telephone and when her mother arrived at Ligna's apartment. Ligna denied telling Lisa Peterson, the social worker with whom she spoke regarding the alleged incident, that she had asked defendant to go to counseling or to talk with a priest. (The latter testimony was contradicted by a report prepared by Ms. Peterson regarding her telephone contacts with Ligna, which report the parties allowed by stipulation to be read into evidence by the trial justice. According to this report, Ligna told the social worker that she had asked defendant to go talk with a counselor and a priest.)

Following a jury trial in Superior Court, defendant was found guilty of second-degree child molestation. The defendant was sentenced to a term of fifteen years—two years to be served at the Adult Correctional Institutions and thirteen years suspended, with probation. In addition, defendant was ordered to register as a sex offender, to attend sex offender counseling, and to have no contact with the victim. On December 14, 2004, the trial justice issued a written order denying defendant's motion for a new trial.

On appeal, defendant argues (1) that the trial justice was clearly wrong in admitting certain hearsay evidence under the excited utterance exception and (2) that the trial justice was clearly wrong in denying defendant's motion for a new trial.

## Standard of Review

We review a trial justice's decision regarding the admissibility of evidence pursuant to the excited utterance exception to the hearsay rule under an abuse of discretion standard. *See State v. Krakue*, 726 A.2d 458, 462 (R.I.1999). It is well settled in this jurisdiction that "[a]ny decision made by a trial justice concerning the admission of excited utterances shall not be overturned unless clearly wrong." *Id.* (quoting *State v. Perry*, 574 A.2d 149, 151 (R.I.1990)); *see also State v. Gomes*, 881 A.2d 97, 109 (R.I.2005) ("The admissibility of evidence pursuant to an exception to the hearsay rule is a question that is addressed to the sound discretion of the trial justice, and a ruling in that respect will not be disturbed on appeal unless it is clearly erroneous."); *State v. Arruda*, 785 A.2d 565, 567 (R.I.2001) (mem.) ("We will not second guess a trial justice's discretion to admit or deny admission of an excited

utterance, unless and until we are convinced that he or she was clearly wrong.").

■■■ Similar principles apply to our review of a trial court's denial of a motion for a new trial. In cases in which a trial justice has articulated an adequate rationale for denying such a motion, the trial justice's ruling is given deference. *See State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994) ("In cases in which the trial justice has articulated a sufficient rationale for denying a motion for a new trial, the decision will be given great weight."); *see also State v. Gomez*, 848 A.2d 221, 234 (R.I. 2004); *State v. Rivera*, 839 A.2d 497, 503 (R.I.2003); *State v. Otero*, 788 A.2d 469, 472 (R.I.2002). We will disturb such a ruling on appeal only if "the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong." *Banach*, 648 A.2d at 1367; *see also Gomez*, 848 A.2d at 234; *Otero*, 788 A.2d at 472. The burden of persuading this Court that the trial justice has erred in ruling on a motion for a new trial is on the party challenging the ruling. *Rivera*, 839 A.2d at 503.

## Analysis

### I

### The Excited Utterance Issue

The defendant's first argument on appeal is that the trial justice committed clear error in admitting certain evidence under the excited utterance exception to the hearsay rule. The defendant contends that the trial justice abused his discretion in ruling that the statements that Jane made to her mother both over the tele-

phone and at her aunt Ligna's apartment were admissible under this exception. We disagree with defendant's contention.

The excited utterance exception to the hearsay rule is set forth in Rule 803(2) of the Rhode Island Rules of Evidence. Rule 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule— notwithstanding the fact that the declarant may be available to testify as a witness.

■■■ It is well settled in this jurisdiction that, in order to qualify as an excited utterance, the statement need not have been strictly contemporaneous with the startling event. *State v. Momplaisir*, 815 A.2d 65, 70 (R.I.2003); *State v. Vaccaro*, 111 R.I. 59, 62, 298 A.2d 788, 790 (1973) ("In this state we have never insisted on strict contemporaneity."). This Court has "rejected any approach to the determination of what constitutes a spontaneous utterance strictly on the basis of the lapse of time which occurs between the incident and the utterance." *Vaccaro*, 111 R.I. at 63, 298 A.2d at 790; *see also State v. Jalette*, 119 R.I. 614, 623, 382 A.2d 526, 531 (1978) ("[T]he delay in time between the exciting event and the utterance is only one factor to be considered."); *State v. Nordstrom*, 104 R.I. 471, 476, 244 A.2d 837, 840 (1968) ("We eschew any approach to this question [of whether or not a statement is an excited utterance] which calls for a blind obedience to a clock and hour by hour count of the time that has transpired between the event and declaration.").[4]

---

4. This Court's jurisprudence relative to the excited utterance exception has been constant over the years. For example, Justice Kelleher's opinion in *State v. Nordstrom*, 104 R.I. 471, 475, 244 A.2d 837, 840 (1968) observed

that "[l]ong ago in *State v. Murphy*, 16 R.I. 528, 17 A. 998 [(1889)], we held that the elapsed time interval between the event and the statement is not to be deemed the control-

■ Instead, the determinative factor in deciding whether or not a statement qualifies as an excited utterance is whether the declarant was still laboring under the stress of excitement caused by the event when he or she made the statement at issue. *See Nordstrom*, 104 R.I. at 476, 244 A.2d at 840 ("The crucial question is whether from a consideration of all the facts the trial justice is satisfied the declarant was still laboring under the stress of the nervous excitement when * * * she spoke."); *see also State v. Wright*, 817 A.2d 600, 606 (R.I.2003) ("Spontaneous exclamations can be admitted as an excited utterance—even if the statement is not strictly contemporaneous with the exciting event—if, after considering all the facts in the case, it is apparent that the declarant was still laboring under the stress of the excitement produced by the event described when he or she uttered the statement in question.").

■ In sexual assault cases, especially cases in which the victim is a child of tender years, the time requirement with respect to excited utterances is less demanding. *See State v. Souza*, 456 A.2d 775, 778 (R.I.1983); *Jalette*, 119 R.I. at 619, 382 A.2d at 529; *see also State v. Burgess*, 465 A.2d 204, 207 (R.I.1983). The advisory committee's notes concerning Rule 803 explain the rationale for this "less demanding" criterion as follows: "[I]n sexual assault cases the shock of the event often lasts longer and the outpouring may come only later, when a parent, friend, or officer is present." Nevertheless, even in these cases, the trial justice must find that each statement at issue was "a spontaneous verbal reaction to some startling or shocking event made at a time when [the victim] was still in the state of nervous excitement produced by that event and before she had time to contrive or misreling element in determining the competency

present" before the statement can be admitted as an excited utterance. *Jalette*, 119 R.I. at 621, 382 A.2d at 530; *see also Nordstrom*, 104 R.I. at 475–76, 244 A.2d at 840. The spontaneity of the statement at issue must be evaluated by examining the circumstances that existed when said statement was made. *Jalette*, 119 R.I. at 621, 382 A.2d at 530.

■ In the present case, it is our opinion that the trial justice did not abuse his discretion in ruling that the statements that Jane made to her mother both over the telephone and at her aunt Ligna's apartment on October 5 were admissible under the excited utterance exception to the hearsay rule. *See Krakue*, 726 A.2d at 462. Evidence was presented at trial which could reasonably support a conclusion that Jane was "still laboring under the stress of the nervous excitement engendered by the event" when she spoke with her mother. *See Vaccaro*, 111 R.I. at 63, 298 A.2d at 790; *see also Wright*, 817 A.2d at 606. Jane's mother, Pilar, testified that Jane seemed frightened and was crying when she spoke with her by telephone on the morning of October 5. Pilar further testified that Jane looked sad and frightened and was crying when she spoke with her in person at Ligna's apartment. Although this testimony was contradicted by the testimony of Jane's aunt (Ligna) and that of her cousin (Thomas), both of whom testified that Jane seemed fine and did not cry the day after the alleged incident, the trial justice clearly found Pilar's testimony to be credible. *See State v. Roberts*, 705 A.2d 1380 (R.I.1997) (mem.) ("When the trial justice is faced with a credibility determination, this court will give great deference to his or her determination and will not itself weigh the credibility of the witnesses."). The existence of this evidence of an alleged spontaneous statement."

of Jane's demeanor when she made the statements at issue distinguishes this case from *State v. Poulin*, 415 A.2d 1307, 1311 (R.I.1980), in which we held that the trial justice erred in admitting certain hearsay evidence under the excited utterance exception because there was a total absence of "demeanor evidence" presented at trial.

Given the evidence before the trial justice in this case, it is our opinion that he was not clearly erroneous in concluding that Jane was "still laboring under the stress of the nervous excitement engendered by the event" when she made the statements to her mother. Therefore, we will not reverse his ruling that the statements were admissible under the excited utterance exception to the hearsay rule. *See Vaccaro*, 111 R.I. at 63, 298 A.2d at 790; *see also Wright*, 817 A.2d at 606. Although some period of time had elapsed between the alleged incident and Jane's statements to her mother, it was not an abuse of discretion for the trial justice to find that these statements met the less demanding time requirement that applies in sexual assault cases involving children. *See Souza*, 456 A.2d at 778; *Jalette*, 119 R.I. at 619, 382 A.2d at 529. The trial justice did not abuse his discretion in finding that Jane's statements, although made hours after the alleged incident, were nonetheless, in the words of *Jalette*, "spontaneous verbal reaction[s]" to the alleged sexual assault made while Jane was "still in the state of nervous excitement," even though she did not articulate those verbal reactions until the next morning-after defendant had left the house and she had an opportunity to speak with her mother. *See Jalette*, 119 R.I. at 621, 382 A.2d at 530; *see also Nordstrom*, 104 R.I. at 476–77, 244 A.2d at 840–41 (holding that statements made by a five-year-old girl to her mother when they were first reunited approximately thirty hours after the alleged sexual assault, and soon after the girl was separated from the defendant, were an instinctive outpouring which resulted from the child's overwhelming emotional and shocking experience and thus were admissible under the excited utterance exception).

Accordingly, we will not disturb the trial justice's ruling to admit Jane's statements to her mother under the excited utterance exception to the hearsay rule.

## II

### The Motion for a New Trial

The defendant's second argument on appeal is that the trial justice was clearly wrong in denying defendant's motion for a new trial. We also disagree with this contention.

When considering a motion for a new trial, the trial justice's proper role is that of a "thirteenth juror." *Banach*, 648 A.2d at 1367; *see also State v. Castro*, 891 A.2d 848, 855 (R.I.2006). In fulfilling this role, the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury. *Banach*, 648 A.2d at 1367; *see also State v. Mondesir*, 891 A.2d 856, 862 (R.I.2006). If the trial justice is in agreement with the jury's verdict or finds that the evidence is such that reasonable minds could differ as to the proper outcome, the motion for a new trial should be denied. *Otero*, 788 A.2d at 472; *see also Mondesir*, 891 A.2d at 862; *Banach*, 648 A.2d at 1367. If, on the other hand, the trial justice determines that the state has failed to meet its burden of proof, the motion for a new trial must be granted. *Otero*, 788 A.2d at 472; *see also Mondesir*, 891 A.2d at 862.

In ruling on a motion for a new trial, it is incumbent upon the trial justice to point to sufficient evidence to allow this Court to determine whether or not the trial justice has applied the appropriate standards. *Banach*, 648 A.2d at 1367; *see also Mondesir*, 891 A.2d at 862; *Otero*, 788 A.2d at 472. In cases where the trial justice has adequately articulated his or her reasons for denying the motion for a new trial, the decision will be given deference by this Court and will not be overturned absent a showing that "the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the trial justice was otherwise clearly wrong." *Banach*, 648 A.2d at 1367; *see also Gomez*, 848 A.2d at 234; *Otero*, 788 A.2d at 472.

In the present case, the trial justice issued a comprehensive written order, which clearly articulated his reasons for denying the defendant's motion for a new trial. In his written order, the trial justice found that there was "substantial evidence in support of the jury's verdict," and he summarized that evidence. The trial justice found Jane to be a "reliable, accurate complainant" and Pilar to be "a credible witness." By contrast, the trial justice found that "[e]ach of the Defendant's witnesses had substantial credibility issues." Specifically, the trial justice found that "the jury could properly disregard all of [Thomas's] testimony." The trial justice further found that Ligna was

"a witness with an obvious interest in the outcome of the case" and also that her testimony was in large part impeached by the statement of Ms. Peterson that was read to the jury.[5] After considering all of the evidence in light of the jury charge, the trial justice found that he would have reached the same verdict as the jury. Consequently, he denied the defendant's motion for a new trial.

Giving appropriate deference to the trial justice's decision—including his credibility assessments—we will overturn a denial of a defendant's motion for a new trial only if we conclude that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *See Gomez*, 848 A.2d at 234; *Otero*, 788 A.2d at 472; *Banach*, 648 A.2d at 1367. After carefully reviewing the entire record as well as the trial justice's order, we do not reach such a conclusion in the present case. Accordingly, we affirm the denial of the defendant's motion for a new trial.

### Conclusion

For these reasons, the judgment of the Superior Court is affirmed.

---

5. One of the functions of a trial justice in passing upon a motion for a new trial is to exercise "independent judgment on the credibility of witnesses * * *." *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994); *see also State v. Gomez*, 848 A.2d 221, 234 (R.I.2004); *State v. Otero*, 788 A.2d 469, 472 (R.I.2002).