STATE

v.

**Paula ABREU.**

**No. 2004–219–C.A.**

Supreme Court of Rhode Island.

June 9, 2006.

474

Diane Daigle, Esq., for Plaintiff.

Robert J. Caron, Esq., for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

After a jury trial, the defendant, Paula Abreu, was convicted on February 12, 2004 of one count of assault with a dangerous weapon. She was sentenced to ten years at the Adult Correctional Institutions (one year to serve and the balance suspended, with probation). The defendant now appeals from that conviction, contending that, because she had raised the defense of self-defense, the trial justice erred in excluding evidence of prior specific acts of violence committed by the victim of which the defendant was aware at the time of the incident.

The defendant also contends (1) that her motion *in limine* was improperly denied as untimely and (2) that the trial justice abused his discretion in denying her motion for a new trial, in which she contended that the verdict was against the weight of the evidence. For the reasons set forth herein, we deny defendant's appeal and affirm the judgment of conviction.

## Facts and Travel

At the time of the incident that gave rise to this appeal, Sonalee Gutierrez, who is defendant's niece by marriage, lived with her mother and stepfather in an apartment on the second floor of a multifamily building at 39/41 Felix Street in Providence. The building was owned by defendant and her husband.

In the late afternoon hours of June 29, 2003, Ms. Gutierrez and her friend Winter Jones were spending time at Ms. Gutierrez's apartment and were planning to go to a carnival in East Providence. At around 5:30 p.m., Ms. Gutierrez and Ms. Jones left the apartment through the back door and walked around to the front of the house, where Ms. Jones's car was parked. At that time, defendant was sitting on the front porch of the house with several of her relatives, including her daughter Suzette, her nephew Michael, and two of her nieces. The defendant's son Martin was inside the first-floor apartment watching television, and her two-year-old nephew Jordi was walking around in the front yard.

The defendant's account of what happened after Ms. Gutierrez and Ms. Jones emerged from the back of the house is

markedly different from that of Ms. Gutierrez. According to defendant, as Ms. Gutierrez walked toward the front of the house, she was muttering under her breath, which prompted defendant to say, "Do you have something to say; just say it." The defendant testified further that Ms. Gutierrez then began calling her names such as "stupid" and uttered other "bad words." The defendant stated that an argument ensued, and it became heated. She testified that Ms. Gutierrez was saying things like, "[D]on't mess * * * with me. I'm Puerto Rican. I can mess you." The defendant's son Martin testified that he had come outside to the porch when he heard the word "bitch" and that, as the argument became more heated, he observed Ms. Gutierrez move further and further up the front steps towards the porch.

The defendant testified that, after Ms. Gutierrez began making comments about "messing with" her, she told Ms. Gutierrez that she did not want to fight with her and that she was going to go inside. The defendant further testified that, when she stood up to go inside the house, she felt something move past her face and hit the wall behind her. According to Martin's testimony, Ms. Gutierrez had taken a glass out of the hand of her friend, Winter Jones, and had thrown it at defendant, causing the glass to hit the outside of the house and break. The testimony of defendant's daughter Suzette and her nephew Michael was consistent with that of Martin.

The defendant testified that, after the glass broke, Ms. Gutierrez continued to move toward her and defendant asked her what she was going to do. It was at that point, according to defendant, that Ms. Gutierrez punched her in the head, causing her to fall on her back on the steps and to lose consciousness for a period of time. The defendant testified that Ms. Gutierrez continued to punch and kick her and that she could not breathe. She further testified that Ms. Gutierrez repeatedly told her, "I'm going to kill you, bitch." The defendant said that, because she was afraid, she reached out and grabbed a piece of the broken glass and swung at Ms. Gutierrez. The defendant's son Martin, her daughter Suzette, and her nephew Michael all testified consistently with defendant's version of events.

According to Ms. Gutierrez's testimony, as she walked from the back of the house to the front while on her way to the car of her friend, Winter Jones, she said hello to her cousin Jordi. She testified that defendant then told Jordi to call Ms. Gutierrez a certain profane name in Spanish. Ms. Gutierrez testified further that defendant repeated the profanity three or four times before turning to Ms. Gutierrez and saying vulgar things to her directly. At that point, she and defendant engaged in an argument, which escalated to the point where Ms. Gutierrez walked closer to the front steps to make one final comment to defendant before she turned towards Ms. Jones's car to leave. According to Ms. Gutierrez, defendant then picked up something that was lying in front of her on the stairs and lunged at her. Ms. Gutierrez testified that she was initially able to block the attack by putting her hands in front of her face, but that she then swung back at defendant—at which point defendant was able to hit her on the forehead with the object.

Ms. Gutierrez testified that the fight continued and that defendant again hit her on the head, after which Ms. Gutierrez hit defendant a second time, causing defendant to fall onto the front steps. Ms. Gutierrez then continued to hit defendant until her friend Ms. Jones noticed that she was bleeding and told her to get into the

car. According to Ms. Gutierrez's testimony, she then put her fingers to her forehead to apply pressure and, when she did so, she felt an object embedded there, but did not know what it was. She then ran to Ms. Jones's car and, once in the car, she was able to remove the object, which she then determined was a piece of broken glass. Ms. Jones then drove Ms. Gutierrez to Roger Williams Hospital, where she was treated for her injuries; she received thirty-three stitches in her forehead, eyelid, and upper arm. Ms. Jones's testimony regarding the altercation was consistent in all material respects with that of Ms. Gutierrez.

While at the hospital, Ms. Gutierrez was interviewed by Providence Police Officer Thomas Connetta. Officer Connetta testified at trial that, when he met with Ms. Gutierrez in the emergency room of Roger Williams Hospital, she was covered in blood. Officer Connetta further testified that, when he asked Ms. Gutierrez what had happened to her, she informed him that she had had an argument with defendant and that defendant had attacked her with a piece of glass. After taking Ms. Gutierrez's statement, Officer Connetta proceeded to drive to 39/41 Felix Street, where he arrested defendant.

At the conclusion of the trial, a jury found defendant guilty of assault with a dangerous weapon. The defendant thereafter filed a motion for a new trial, which was denied on February 24, 2004. The trial justice sentenced defendant to ten years at the Adult Correctional Institutions with one year to serve and the balance suspended, with probation. The defendant was released on bail pending this appeal.

## Standard of Review

■■■ Only issues that have been properly placed on the record at trial will be considered by this Court on appeal. *Mead v. Papa Razzi*, 899 A.2d 437, 441–42, 2006 WL 1506950 (R.I.2006). Moreover, an objection or a motion upon which a trial justice has not ruled presents no question for review by this Court. *State v. Burns*, 524 A.2d 564, 570 (R.I.1987); see also *Russian v. Lipet*, 103 R.I. 461, 465, 238 A.2d 369, 372 (1968).

With respect to our review of a trial justice's decision to deny a motion for a new trial, we have consistently maintained that we will not overturn such a decision unless, in making that decision, the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Morales*, 895 A.2d 114, 122 (R.I.2006) ("In cases where the trial justice has adequately articulated his or her reasons for denying the motion for a new trial, the decision will be given deference by this Court and will not be overturned absent a showing that the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the trial justice was otherwise clearly wrong.") (internal quotation marks omitted).

## Analysis

### I

### Motion *in Limine*

■■■ The defendant contends on appeal that the trial justice improperly denied her motion *in limine* as untimely; she argues that, if the trial justice had granted the motion, she would have introduced evidence to show that, at the time of her encounter with Ms. Gutierrez, she had knowledge of prior acts of violence that Ms. Gutierrez had committed. It is defendant's assertion that such evidence would have supported her claim that she acted in self-defense by demonstrating the reasonableness of her fear at the time of the confrontation with Ms. Gutierrez.

Fatal to defendant's argument, however, is the fact that defendant never actually filed a motion *in limine* seeking to introduce such evidence in the trial court, nor did defendant ever attempt to elicit testimony on the record at trial with respect to Ms. Gutierrez's alleged prior acts of violence. It was not until the hearing on defendant's motion for a new trial that defendant first made reference on the record to a motion *in limine*, although she claims that reference to an *in limine* motion about Ms. Gutierrez's alleged prior acts of violence was made during a discussion in chambers of which there is no record evidence. In order to preserve the issue for appellate review, however, defendant would have had to ensure that her motion *in limine* would be preserved on the record.

In *State v. Lopes*, 767 A.2d 673, 677 (R.I.2001), we declined to address a defense argument that allegedly had been raised in a motion *in limine* when there was no record that such a motion had ever been filed, much less ruled upon by the trial justice. We can apply to the instant case the following sentence from our opinion in *Lopes*: "Considering that there is no record evidence of the error alleged by the defendant, we will not address [defendant's] appellate contention in that regard." *Id.*

## II

## Motion for New Trial

■ The defendant also contends on appeal that the trial justice abused his discretion in denying her motion for a new trial. It is defendant's contention that the jury verdict was against the weight of the evidence and that a new trial was therefore warranted. We disagree with this contention.

■ In considering a motion for a new trial, the trial justice acts as a "thirteenth juror" and must conduct a three-prong analysis to determine whether to grant or deny the motion. *See, e.g., Morales*, 895 A.2d at 121; *State v. Mondesir*, 891 A.2d 856, 862 (R.I.2006). The trial justice must first "consider the evidence in light of the jury charge." *Morales*, 895 A.2d at 121. Second, he or she must make an independent assessment of the credibility of the witnesses and the weight of the evidence. *Id.* The trial justice must then "determine whether he or she would have reached a result different from that reached by the jury." *Id.* If the trial justice agrees with the jury's verdict or determines that reasonable minds could differ, the motion must be denied. *Mondesir*, 891 A.2d at 862.

■ "In ruling on a motion for a new trial, 'the trial justice need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this court to discern whether the justice has applied the appropriate standards.'" *Id.* (quoting *State v. Otero*, 788 A.2d 469, 472 (R.I.2002)). After reviewing the record in the instant case, it is clear to us that the trial justice conducted a thorough review of the evidence and found the state's witnesses to be credible. Specifically, the trial justice stated that the testimony of Ms. Gutierrez "appeared unvarnished and unembellished." With respect to Ms. Jones's testimony, the trial justice found it to be "straight-forward and candid." By contrast, the trial justice found the testimony of defendant's witnesses to be "disparate" and "varied." The trial justice concluded that the jury's credibility determinations were justified.

Because the trial justice correctly applied the appropriate standard in ruling on the defendant's motion for a new trial and did not overlook or misconceive material

evidence, we will not overturn his decision to deny that motion.

## Conclusion

For the reasons stated herein, we deny the defendant's appeal and affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.