STATE

v.

Wendy BARRY.

No. 2008–191–C.A.

Supreme Court of Rhode Island.

Nov. 16, 2009.

Virginia M. McGinn, Department of Attorney General.

C. Daniel Schrock, Esq.

ORDER

This case came before the Supreme Court on October 28, 2009, pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not summarily be decided. The defendant, Wendy Barry, appeals from a jury verdict finding her guilty of two counts of first-degree child molestation and one count of third-degree sexual assault. The defendant was sentenced to twenty years in the Adult Correctional Institutions, with eight years to serve, twelve years suspended with probation for the first two counts, and five years suspended for count three, all sentences to run concurrently. After reviewing the memoranda submitted by the parties and hearing counsel's arguments, we are satisfied that cause has not been shown and, thus, the appeal may be decided at this time.

The facts in this case are disturbing. In 1998, twelve-year-old Jonathan[1] and his younger sister Britney visited their father, Mark, almost every weekend; the siblings' parents were divorced, and Mark lived with defendant and her infant son, Justin. Jonathan testified that one night in September 1998, after he fell asleep on the couch in the parlor,[2] he was awakened by defendant performing oral sex on him. Although he testified that he wanted to go home, Jonathan said nothing about the incident to defendant or his father the next morning, and waited to be picked up by his mother that afternoon. A few weekends later, Jonathan, then thirteen, came back to the house for the first time since the initial incident occurred. He testified that nothing happened that first weekend back, but during the second weekend back he again awoke in the middle of the night to find defendant performing oral sex on him and then proceeding to engage in sexual intercourse.[3] He testified that he was "scared" and "didn't know what to do;" however, he never told anyone—not his teachers, coaches, parents,[4] or best friend, Danny. Danny testified that he knew nothing about what happened,[5] even

1. We shall use fictitious names when referring to people who were minors at the time the events occurred.

2. On this night, Britney was sleeping on the floor in Justin's room; Justin was sleeping in his crib.

3. During this incident, Jonathan was sleeping in a newly placed twin bed in Justin's room; Justin was sleeping in his crib in the same room. Britney was sleeping in the parlor.

4. Shortly after the last incident, Mark and defendant broke up, and Mark moved out of the house; Jonathan testified that he has not seen or heard from Mark since.

5. Danny testified about an event that occurred during Jonathan and Danny's high

though, according to Jonathan, similar events occurred almost every weekend for the next two years.

Jonathan kept his secret until 2005, when he was nineteen and engaged to his girlfriend (now wife), Tiffany, who is defendant's niece. In January 2005, Tiffany confronted Jonathan with a disturbing rumor. She testified that she remembered that, a few years earlier, when defendant was pregnant with another child, Brian, defendant verbally speculated about whether Brian's father was Mark or Jonathan. Although "[Jonathan] was in tears * * * and nervous," he told Tiffany about the prior sexual abuse. Tiffany alluded that he should tell the police.

After a jury trial in Superior Court, defendant was found guilty of two counts of first-degree child molestation and one count of third-degree sexual assault. On December 11, 2007, the trial justice denied defendant's motion for a new trial; defendant then appealed to this Court arguing that the trial justice clearly erred when he denied the motion for a new trial. The defendant contends that it was "incredible" that Jonathan would allow this to occur for two years and not tell his father, his best friend, or an adult—a lesson he should have learned in sexual education classes. The defendant also contends that it was illogical that defendant would perform the first lewd act in the middle of the parlor— an open area in the home.

It is well settled that this Court will not disturb a trial justice's decision denying a motion for a new trial unless the trial justice overlooked or misconceived material evidence relating to a critical issue in the case or was otherwise clearly wrong.

*State v. Stansell*, 909 A.2d 505, 511 (R.I. 2006); *see also State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007); *State v. Morales*, 895 A.2d 114, 122 (R.I.2006). When a trial justice decides a motion for a new trial, he or she "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *Stansell*, 909 A.2d at 511 (quoting *State v. Davis*, 877 A.2d 642, 646 (R.I.2005)); see also *Schloesser*, 940 A.2d at 639 (explaining that the trial justice must: "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a different result") (quoting *Morales*, 895 A.2d at 121). Finally, if the trial justice articulates an adequate rationale for his or her decision, such a decision is entitled to great weight. *Stansell*, 909 A.2d at 511.

With these standards in mind, we reject defendant's contention that the trial justice erred when he denied defendant's motion for a new trial. The trial justice clearly articulated sound reasons for doing so; he noted that the prosecution had presented four witnesses, and he summarized their testimony. He dismissed defendant's contention that if the events actually occurred, Jonathan would have either bragged to his friend Danny or reported it to his father Mark, noting that their father-son relationship was not such that such disclosure likely would occur. He explained that he was "impressed with the manner by which [Jonathan] testified" and that he had no "concern or suspicion" surrounding any of the witnesses. The trial justice believed

school dance, when defendant barged into the dance, proclaimed that she was Jonathan's girlfriend, and ripped a gold chain off Jonathan's neck. Danny testified that he did not broach the subject because he felt that it was

inappropriate of him to ask. Jonathan's mother testified that when she learned about the incident at the dance she confronted defendant, and defendant became "very defensive."

that the jury could conclude that defendant's remarks about Brian's paternity were an "admission of having engaged in sexual relationships with [Jonathan] such that those relationships could have produced a child."

We are satisfied that the trial justice set forth adequate reasons explaining why he denied the defendant's motion for a new trial in this case. We are unable to conclude that he was clearly wrong; he was cognizant of the legal standard, assessed the witnesses' credibility, and found that reasonable minds could not differ based upon the evidence and the law. *See State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008) (upholding trial justice's denial of motion for new trial based on similar factors);

*Morales*, 895 A.2d at 122 (noting that the trial justice clearly articulated his reasons for denying the motion by summarizing evidence and evaluating witness credibility). Mindful that we are required to give the trial justice's decision great weight, we are fully satisfied that he was within his right to deny the motion.

For the reasons stated in this order, the judgment of the Superior Court is affirmed.