STATE

v.

### William POMPEY.

No. 2006–249–C.A.

Supreme Court of Rhode Island.

Nov. 9, 2007.

---

---

Christopher M. Bush, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 24, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Accordingly, we shall decide the appeal without further briefing or argument.

The defendant, William Pompey (defendant or Pompey), appeals from a hearing justice's determination that he violated the terms of his probation, resulting in the imposition of two previously suspended sentences. The defendant had been convicted of assault with a dangerous weapon and two charges of domestic assault.[1] As a violator, he was ordered to serve concurrent terms at the Adult Correctional Institutions (ACI).

The record discloses that Paul J. O'Rourke (O'Rourke), a veteran patrolman of the Providence Police Department, who was assigned to the Public Housing Unit throughout his thirty-four-year career, was the only witness to testify on the issue of violation of probation. He recounted the events leading up to defendant's arrest.

---

1. The defendant was before the court on numerous felony convictions. On September 21, 1998, Pompey entered a plea of *nolo contendere* to one count of assault with a dangerous weapon, and he was sentenced to ten years imprisonment, eighteen months to serve and eight and one-half years suspended, with probation (W2/98–232A). On July 29, 2002, Pompey was convicted of felony domestic assault, and he received a sentence of ten years at the ACI, with three years and nine months to serve and the balance suspended, with probation to commence upon release. He also pled guilty to one count of leaving the scene of an accident with property damage resulting, and he received a one-year suspended sentence, with probation to run concurrently (P2/01–3729A). On February 12, 2003, Pompey entered a *nolo contendere* plea to one count of felony domestic assault, and he received a sentence of five years at the ACI, with one year to serve and four years suspended, with probation to commence upon release (P2/02–3040A). The hearing justice ordered defendant to serve seven and one-half years in W2/98–232A; five years and three months in P2/01–3729A, and continued him on the same suspended sentence in P2/02–3040A.

According to O'Rourke, he had known defendant since he was a small child and was also acquainted with the complainant, Marama Crowell (complainant or Crowell). O'Rourke testified that complainant and defendant were "going out together."

Officer O'Rourke testified that at 9:30 p.m. on October 12, 2005, he was called to a domestic disturbance at 29 Salmon Street. The complainant answered the door and appeared "all scratched up and her T-shirt was ripped." He said that complainant was very upset and physically shaking, and she spoke in a "high voice." Before he asked her any questions, she told Officer O'Rourke that "Wu Wu beat me up." The witness testified that "Wu Wu" is defendant's nickname. Officer O'Rourke admitted under cross-examination that there is nothing in the police report he filed that identifies complainant as saying "Wu Wu beat me up."

The complainant did not testify at trial, and the reasons for her absence are not contained in this record. After O'Rourke testified, the state rested and defendant did not present any evidence. The hearing justice summarized the testimony and reviewed the photographs of the complainant as well as the police report. Although the police report was offered by defendant to show that there were no excited statements set forth, it also recited Crowell's statement that she was assaulted by Pompey, who was the father of her child. The hearing justice examined the photographs and noted that it was "quite obvious that [Crowell] had received fresh injuries," and she had "scrapes and bruises and abrasions and ripped clothing, all consistent with somebody assaulting her and battering her." The hearing justice was satisfied that defendant "did not live up to the terms of the probationary contract he entered into with the State of Rhode Island"

and found him in violation of the terms of his probation.

On appeal, Pompey raises two issues for our review. He first argues that the hearing justice erred in admitting the out-of-court statement of the complainant under the "excited utterance" exception to the hearsay rule; secondly, he argues that the hearing justice erred by relying on that statement to find defendant to be a probation violator.

■ This Court reviews a finding of probation violation by examining the record to determine whether the hearing justice acted arbitrarily or capriciously or was otherwise clearly wrong. *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998). "It is well settled that the burden of proof in a probation-revocation hearing is considerably lower than in a criminal case." *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005). "Keeping the peace and remaining on good behavior are conditions of probation." *State v. Waite*, 813 A.2d 982, 985 (R.I. 2003). The sole purpose of a probation-revocation proceeding is for the hearing justice to determine whether he or she is reasonably satisfied that these conditions have been violated. *Id.* "Consequently, the reasonably satisfied standard * * * should be applied to whether defendant maintained the conditions of his probation" and not to the issue of defendant's guilt with respect to the new charges. *Id.*

■ The defendant's assignment of error relies, in part, on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), in which the United States Supreme Court held that "the Confrontation Clause strictly prohibited the admission of hearsay evidence in the form of 'testimonial' statements, absent a showing of unavailability and a prior and meaningful opportunity for cross-examination, irrespective of substantive guarantees of evidentiary reliability." *State v. Feliciano,*

901 A.2d 631, 640 (R.I.2006) (citing *Crawford*, 541 U.S. at 57, 59, 61, 124 S.Ct. 1354). In *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court drew a distinction between testimonial and nontestimonial evidence that we deem determinative in the case before us:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 126 S.Ct. at 2273–74.

Having reviewed the testimony in this case in the context in which the out-of-court statement was made, we are of the opinion that the complainant's statement that "Wu Wu beat me up" was nontestimonial and made voluntarily during the initial response of the police officer to an emergency call for assistance.

In addition, the Sixth Amendment Confrontation Clause only affords an accused the right to confront his or her accusers "[i]n all criminal prosecutions." U.S. Const. Amend. VI. Because a probation violation proceeding is not a criminal prosecution, the defendant is not entitled to "the 'full panoply of rights' normally guaranteed to defendants in criminal proceedings." *State v. Summerour*, 850 A.2d 948, 952 (R.I.2004) (quoting *State v. Crudup*, 842 A.2d 1069, 1073 (R.I.2004)). We therefore decline to hold that the rule announced in *Crawford* applies to probation violation proceedings. In so ruling, we join numerous appellate courts that have addressed the issue and concluded that *Crawford* does not apply in the probation revocation context or the analogous supervised release revocation context.[2]

■ We are mindful, however, that "because a hearing on the revocation of probation may result in a loss of liberty, such a hearing must provide certain constitutional safeguards." *State v. Casiano*, 667 A.2d 1233, 1239 (R.I.1995). The defendant in a violation hearing is entitled to the minimum due process protections of "notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence [on] defendant's behalf, and the right to confront and cross-examine the witnesses against defendant." *State v. Bernard*, 925 A.2d 936, 938–39 (R.I.2007) (quoting *State v. Vashey*, 823 A.2d 1151, 1155 (R.I.2003)). We previous-

**2.** *See, e.g., United States v. Kelley*, 446 F.3d 688, 691–92 (7th Cir.2006) (holding that nothing in *Crawford* suggests that revocation proceedings now should be characterized as criminal prosecutions within the meaning of the Sixth Amendment, and therefore *Crawford* does not apply to supervised release revocation hearings); *United States v. Rondeau*, 430 F.3d 44, 47–48 (1st Cir.2005) (holding that the Confrontation Clause does not apply to post-conviction proceedings, and *Crawford* does not apply to a supervised release revocation hearing because it is not a criminal prosecution); *United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir.2005) (holding that *Crawford* does not apply to revocation of supervised release hearings); *United States v. Aspinall*, 389 F.3d 332, 343 (2d Cir.2004) (holding that *Crawford* reviewed a criminal trial, and there is nothing in *Crawford* to suggest that its Confrontation Clause principle should apply to probation revocation proceedings); *United States v. Martin*, 382 F.3d 840, 844 n. 4 (8th Cir.2004) (holding that *Crawford* involved confrontation rights in criminal prosecutions and therefore does not apply to a supervised release revocation hearing); *Commonwealth v. Wilcox*, 446 Mass. 61, 841 N.E.2d 1240, 1246–48 (2006) (holding that the rule set forth in *Crawford* does not apply to probation revocation hearings).

ly have declared that "hearsay may be admitted on issues central to determining whether a violation has been committed only if the hearing justice first finds that 'there is good cause for denying confrontation and/or cross-examination.'" *Id.* at 939 (quoting *State v. DeRoche,* 120 R.I. 523, 533, 389 A.2d 1229, 1234 (1978)). A trial justices evidentiary rulings are reviewed under an abuse-of-discretion standard. *State v. Morales,* 895 A.2d 114, 118 (R.I.2006). The admissibility of an out-of-court statement as an excited utterance is within that discretion and will not be overturned unless the trial justice was clearly wrong. *State v. Torres,* 787 A.2d 1214, 1222 (R.I.2002) (citing *State v. Medina,* 767 A.2d 655, 658 (R.I.2001)).

▮ We contrast this case with our recent holding in *Bernard,* 925 A.2d at 937–38, in which this Court was confronted with a finding of violation predicated on the testimony of a single witness, with no personal knowledge about the case or the probationer, who was reading notes from a file compiled by someone else. The offending testimony in *Bernard* best can be characterized as classic hearsay testimony, with no indicia of reliability. Clearly, the testimony was inadmissible. Here, O'Rourke testified from personal observation of the complainant and the circumstances under which she spoke.

Rule 803(2) of the Rhode Island Rules of Evidence provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule, even though the declarant is available as a witness. Thus, although the declarant did not testify, her unavailability is not a prerequisite to admissibility.

R.I.R.Evid. 803; *see also Medina,* 767 A.2d at 658. "The rationale for the excited utterance or spontaneous exclamation exception is that a startling event may produce an effect that temporarily stills the declarant's capacity of reflection and produces statements free of conscious fabrication." *State v. Krakue,* 726 A.2d 458, 462 (R.I.1999) (quoting R.I.R.Evid. 803(2) advisory committee's notes).

▮ This Court has ruled that in order to qualify as an excited utterance, the statement need not have been strictly contemporaneous with the startling event. *Morales,* 895 A.2d at 119; *see also State v. Potter,* 423 A.2d 67, 68 (R.I.1980). Instead, the determinative factor in deciding whether or not a statement qualifies as an excited utterance is whether the declarant was still laboring under the stress of excitement caused by the event when he or she made the statement at issue. *Morales,* 895 A.2d at 120.

Officer O'Rourke testified that he arrived at the scene of a domestic disturbance within minutes of being dispatched, and encountered the complainant, who was "very upset," spoke in a "high voice," and was physically shaking. She also had scratches on her body and her T-shirt was ripped. Based on this testimony, the hearing justice found that the out-of-court statement was "the result of the startling incident and not some attempt by her to fabricate [the complaint]." We have reviewed the record in this case and conclude that the hearing justice's characterization of complainant's statement as an excited utterance was not an abuse of discretion.[3]

Accordingly, having carefully reviewed the record and the memoranda of the par-

---

3. The defendant's argument to this Court that complainant's familiarity with the criminal justice system somehow demonstrates a lack of reliability is not supported by any evidence, and it is contrary to the findings of the hearing justice.

ties, we are satisfied that the hearing justice properly permitted O'Rourke to testify about the statement complainant made.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we return the papers in the case.