DECISION
Defendant, Elliott Nelson, appears before the Court seeking an order quashing his sentence of imprisonment as a violator of his probationary sentence in P2-03-2826. The Court previously had declared Defendant a violator after an evidentiary hearing based upon a finding that his conduct was beneath the standard required by his probationary status. That same conduct formed the basis of new criminal charges that had been filed against him. Following the imposition of his sentence on the violation, the State neither issued an information against Defendant with respect to the new charges nor was he prosecuted on those charges as misdemeanors in the District Court. For the reasons set forth in this Decision, the Court denies Defendant's Motion to Quash.
 I Facts and Travel
On July 16, 2004, Defendant entered a plea of nolo contendere to the charge of possession of cocaine with intent to deliver in violation of § 21-28-4.01(A)(2)(a) of the General Laws of Rhode Island, 1956, as amended, (Reenactment of 2002).[1] A Justice of this Court sentenced him on that case to seven years at the Adult Correctional Institutions, suspended, *Page 2 
seven years probation, which sentence was to run consecutive to another sentence he was serving in P2-02-2747A.[2] As a result of the plea he entered on July 16, 2004, Defendant was declared a violator of the sentence imposed in P2-02-2747A and he was continued on the same sentence.
Almost four years later, on March 7, 2008, the State filed a 32(f) violation report against Defendant in both P2-04-1539A and P2-03-2826A. The violation report consisted of a cover sheet attached to an incident report from the Providence Police Department detailing the basis for the claim that Defendant had violated the terms and conditions of his release.
According to the police report, Providence Police were dispatched to a restaurant/bar on December 1, 2007, to respond to a report of a disturbance in the street. Upon arrival, they encountered Jennifer Fleming. Ms. Fleming told the police that she was in the company of her friend, Misty Machado. At the time, Defendant was Misty's boyfriend. Ms. Fleming reported that Misty and Defendant began to argue outside the bar. When the argument became physical, Fleming stated that she went to Misty's aide, at which point Defendant punched her several times in the face causing her lip and nose to bleed.
The investigating officer noted that Ms. Fleming presented with a minor laceration to the lip and a small amount of blood under her nose. She refused treatment at the scene, preferring to seek her own medical care later. On December 5, 2007, Ms. Fleming responded to the police station and reported injuries far more serious than those noted at the scene. She indicated that she had suffered a broken nose, a chipped bottom tooth, a bump on her forehead, and a fractured right foot. The police charged Defendant with assault with a dangerous weapon, to wit his hands and feet, in violation of § 11-5-2 of the General Laws of Rhode Island.
Following an evidentiary hearing on the 32(f) violation report, a magistrate of this Court *Page 3 
declared Defendant a violator in both cases and revoked all of his suspended time on P2-03-2826A. He continued him on the same sentence on P2-04-1539A.
It is undisputed that after consideration of the charge of felony assault, an assistant or special assistant designated by the Attorney General failed to issue an "information" on the felony charge.[3] The Defendant now seeks the Court to quash his sentence of imprisonment based upon the recent amendment to § 12-19-18.
 II Analysis
Defendant bases his Motion to Quash and Terminate Imprisonment on the newly enacted amendment to § 12-19-18(b)(3) of the General Laws of Rhode Island. He maintains that § 12-19-18 requires the Court to quash his sentence of imprisonment because the State did not return an information against him based upon lack of probable cause, and did not prosecute the alleged assault charges as misdemeanors.
The State objects to Defendant's motion. First, the State claims that Defendant is not entitled to relief under the statute because the decision against issuing an "information" was based upon a determination that the offense constituted misdemeanor assault, rather than felony assault. It was not based upon a finding of no probable cause. However, the State acknowledges that the Defendant never was charged with simple assault, nor was he ever prosecuted for any other criminal charges stemming from the incident of December 1, 2007.
Second, the State maintains that the finding of violation was based, at least in part, on conduct committed by Defendant that did not rise to the level of criminal conduct, but rather *Page 4 
demonstrated that he did not keep the peace and was not of good behavior on the date in question. The State also challenges the constitutionality of the amendment and maintains that it violates the Separation of Powers Doctrine as contained in Article V of the Rhode Island Constitution.
To put this matter in perspective, the Court first will discuss the evolution of § 12-19-18, entitled "Sentence and Execution."
In State v. Garnetto, 75 R.I. 86, 63 A.2d 777 (1949), our Supreme Court had occasion to interpret § 12-19-18 prior to the subject amendment. The case involved a defendant who received a deferred sentence in 1942 after pleading nolo contendere to a charge of assault with a dangerous weapon. In 1946, Garnetto was arrested and charged with rape. Thereafter, he was sentenced to a six-year term of imprisonment for violating the previously deferred sentence given to him on the assault charge. Garnetto, 75 R.I. at 87, 63 A.2d at 778. A grand jury subsequently failed to return a true bill against Garnetto on the rape charge. Id. at 88, 63 A.2d at 778.
In 1948, the General Assembly enacted § 12-19-18 while Garnetto was serving his term of imprisonment for violating his deferred sentence. It provided:
 "Whenever any person shall have been sentenced to imprisonment for violation of a deferred sentence by reason of the alleged commission of a felony, and the grand jury shall have failed to return any indictment on the charge which was specifically alleged to have constituted the violation of said deferred sentence, the sentence to imprisonment for the alleged violation of the deferred sentence shall, on motion made to the court on behalf of the person so sentenced, be quashed and imprisonment thereunder shall be terminated forthwith and the deferred sentence shall have same force and effect as if no sentence to imprisonment had been imposed thereunder." Section 12-19-18.
Subsequently, Garnetto filed a motion to quash the sentence of imprisonment pursuant to *Page 5 
the newly enacted statute. Id. The Superior Court ruled that the statute was an unconstitutional exercise of judicial power by the legislative branch and denied the motion. Garnetto appealed, arguing that the statute merely permitted the quashing of a sentence rather than the annulment of a judgment, and that decreeing the annulment or commutation of a sentence was not an unconstitutional exercise of judicial power by the legislature. The Supreme Court disagreed, observing that
 "the imposition of a sentence by the court in a criminal case is clearly an exercise of judicial power. Broadly speaking such sentencing is the final and conclusive judgment of the court in the case. So considered we see no material distinction between judgment and sentence [because] [t]he terms may often be used more or less interchangeably." Garnetto, 75 R.I. at 91, 63 A.2d at 779.
The Court then held that the General Assembly has
 "no power merely by the provisions of an act to reverse the judgment of a court or to require any court to quash or annul its judgment or in any way to alter its records . . . [because] the passage of a mandatory act directing and compelling a court to quash a sentence previously imposed would amount in effect to a reversal of the court's pronounced judgment [and that] [s]uch an act would be an indirect exercise of judicial power by the general assembly over the judgment and records of the court." Id. at 92-93, 63 A.2d at 780.
Thereafter, the Court declared the statute unconstitutional because it "makes it mandatory that the court grant a motion to quash the sentence of a person duly imprisoned and terminate his imprisonment."Id. at 93, 63 A.2d at 780.
In 1972, our Supreme Court had occasion to review another challenge to the constitutionality of § 12-19-18 on the basis that it constituted an unlawful exercise of judicial power by the General Assembly.See Hazard v. Howard, 110 R.I. 107, 290 A.2d 603 (1972). In that case, in 1969, the defendant pled nolo contendere to entering a dwelling with intent to *Page 6 
commit larceny and was placed on a deferred sentence. Hazard,110 R.I. at 108, 290 A.2d at 604. In 1970, he was arraigned on a complaint and warrant charging him with attempted burglary.Id. He pled not guilty. Id. He then was presented as a violator of the deferred sentence. Id. The Court found him to be a violator based "entirely on the alleged attempted burglary and nothing else." Id. 110 R.I. at 109, 290 A.2d at 604. In 1971, a "Grand Jury returned a no true bill on the crime. . . ."Id. at 109, 290 A.2d at 605. Thereafter, the defendant filed a motion to vacate the sentence imposed for the violation. Id. The motion was denied, and he appealed to the Supreme Court.
The Supreme Court distinguished Garnetto, stating that Garnetto
 "stands for the proposition that s 12-19-18 is unconstitutional insofar as deferred sentence agreements executed prior to its enactment are concerned. That decision does not have the broad sweep for which the state argues. In our judgment the court's statement in Garnetto that
 `In our opinion the passage of a mandatory act directing and compelling a court to quash a sentence previously imposed would amount in effect to a reversal of the court's pronounced judgment. Garnetto, supra, 75 R.I. at 92-3, 63 A.2d at 780'
 applies to the facts in Garnetto, where the act was enacted after the sentence had been `previously' imposed. The quoted language does not apply to the facts in the case at bar where the sentence was imposed after the enactment of s 12-19-18." Hazard, 110 R.I.at 110, 290 A.2d at 605.
The Court then pronounced:
 "Section 12-19-18, when considered in connection with deferred sentence agreements executed and sentences imposed after its enactment does not amount to a reversal of a court's pronounced judgment and is not an indirect exercise of judicial power by the General Assembly over the judgment and records of the court. The statute merely liberalizes, prospectively, the provisions of the deferred sentence statute (s 12-19-19) in favor of the accused. We have no doubt of the General Assembly's power to do so. It has the power to define criminal offenses, to prescribe sentences for the violation thereof, and to provide for the imposition of such sentences and the methods of applying same. Section 12-19-18 *Page 7 
provides in effect that all deferred sentence agreements entered into under s 12-19-19 after the enactment of s 12-19-18 shall be subject to the mandate of s 12-19-18. Accordingly we hold that s 12-19-18, as far as it affects deferred sentence agreements entered into subsequent to the enactment of that statute, is valid." Hazard, 110 R.I. at 111, 290 A.2d at 606 (internal citations excluded).
In a later case, the Court stated that
 "This Court has long held that it is the prerogative of the General Assembly to define criminal offenses and set forth the sentences for those crimes and that when it does so, the Legislature is not intruding upon the judicial function. Although the Legislature may not encroach upon the judicial power by attempting to control or alter a judicial decision or a court's prior judgment, the General Assembly is vested with the power to delineate criminal offenses and their punishments. Moreover, in recognizing the authority of the Legislature to determine the appropriate punishment for a given crime, this Court has refused `to substitute our will for that of a body democratically elected by the citizens of this state and to overplay our proper role in the theater of Rhode Island government.'" State v. Monteiro, 924 A.2d 784, 793-94 (R.I. 2007).
In spite of the holding 28 years ago in Hazard, this Court would be inclined to find that the amendment to § 12-19-18 that is at issue in this case constitutes an encroachment "upon the judicial power by attempting to control or alter a judicial decision or a court's prior judgment."Id. However, the Court need not reach that issue in this Decision because the amendment was enacted in June 2010. According to its terms, the amendment became effective upon passage. In pertinent part, the Act was amended to read as follows:
 "(b) Whenever any person, after an evidentiary hearing, has been sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor said sentence of imprisonment shall, on a motion made to the court on behalf of the person so sentenced, be quashed, and imprisonment shall be terminated when any of the following occur on the charge which was specifically alleged to have constituted the violation:
 (1) After trial person is found `not guilty' or a motion for *Page 8 
judgment of acquittal or to dismiss is made and granted pursuant to Superior or District Court Rule of Criminal Procedure 29;
 (2) After hearing evidence, a `no true bill' is returned by the grand jury;
 (3) After consideration by an assistant or special assistant designated by the attorney general, a `no information' based upon a lack of probable cause is returned;
 (4) A motion to dismiss is made and granted pursuant to the Rhode Island general laws Sec. 12-12-1.7 and/or Superior Court Rule of Criminal Procedure 9.1; or
 (5) The charge fails to proceed in District or Superior Court under circumstances where the state is indicating a lack of probable cause, or circumstances where the state or its agents believe there is doubt about the culpability of the accused.
 (c) This section shall apply to all individuals sentenced to imprisonment for violation of a suspended sentence or probationary period by reason of the alleged commission of a felony or misdemeanor and shall not alter the ability of the court to revoke a suspended sentence or probationary period for an allegation of conduct that does not rise to the level of criminal conduct." Section 12-19-18.
While this provision applies to suspended sentences and probationary terms as opposed to the deferred sentences that were the subject ofGarnetto and Hazard, the Court sees no distinction between such dispositions with respect to the reasoning and analyses set forth in those cases. See State v. Briggs,934 A.2d 811, 816 (R.I. 2007) (holding that a deferred sentence, like pleas of nolo contendere, are considered implied confessions of guilt followed by judgments of conviction "regardless of the subsequent sentence"). Furthermore, it is axiomatic that "statutes and their amendments are applied prospectively, absent clear, strong language, or by necessary implication that the Legislature intended a statute to have retroactive application. . . ." Rodrigues v.State, 985 A.2d 311, 318 (R.I. 2009) (internal quotations omitted).
Defendant was convicted in 2004 after pleading nolo contendere
to narcotics charges in two separate cases. In P2-2826A, he was sentenced to serve seven years at the Adult Correctional Institutions, suspended, seven years probation. In P2-1539A, he was sentenced to *Page 9 
seven years at the Adult Correctional Institutions, forty-eight days to serve, the balance suspended with probation. Those sentences ran concurrent to one another, but consecutive to his previous sentence in P2-02-2747A. In that case, he had received a sentence of three years at the Adult Correctional Institutions, suspended, three years probation.
In 2008, he was presented as a violator in both cases. On May 14, 2008, after a four-day hearing, a magistrate of this Court declared Defendant to be a violator. The magistrate sentenced him to serve six of the years that had been suspended in P2/03-2826A and continued Defendant on the same suspended sentence in P2/04-1539A. On May 22, 2008, Defendant appealed the magistrate's decision to the then Presiding Justice. The appeal was denied. There is no evidence that Defendant ever appealed that decision to the Supreme Court.
The amendment to § 12-19-18 was passed in June 2010, and according to its terms, became effective upon passage. Thus, the amendment took effect almost six years after Defendant's pleas of nolocontendere and over two years after he had been found to be a violator of his suspended sentences and probation.
The General Assembly specifically provided that the amendment would become effective upon passage. Defendant argues that the amendment applies to all persons who were imprisoned on a sentence of violation as of the date of passage. The Court disagrees and finds that the amendment does not have retroactive application.See Rodrigues, 985 A.2d at 318; see also Inre Kent County Water Authority Change Rate Schedules,996 A.2d 123, 130 (R.I. 2010) (stating "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings") (quoting Waterman v. Caprio,983 A.2d 841, 844 (R.I. 2009)). Indeed, had the General Assembly attempted to make it retroactive, it would have constituted an unlawful *Page 10 
exercise of judicial power under our Court's holding inGarnetto. See Garnetto,75 R.I. at 92-3, 63 A.2d at 780 (holding that "a mandatory act directing and compelling a court to quash a sentence previously imposed would amount in effect to a reversal of the court's pronounced judgment").
Considering that the amendment to § 12-19-18 did not take effect until passage, it does not apply to the case at bar because Defendant was sentenced before its enactment. Without determining the constitutionality of the amendment when applied prospectively, the Court concludes that to apply the 2010 amendment retroactively clearly would constitute an unconstitutional exercise of judicial power by the General Assembly.
While not presently before the Court and despite the holding inHazard, which was decided twenty-eight years ago, the Court is not convinced that when applied prospectively, the amendment does not violate either the State or Federal Constitution. SeeBartlett v. Danti, 503 A.2d 515, 517 (R.I. 1986) ("The exercise of judicial power has been defined as the control of a decision in a case or the interference with its progress, or thealteration of the decision once made.") (emphasis in original and internal quotations omitted). In imposing a sentence, the Court is limited by the provisions of the applicable statutes setting forth the maximum and, in some cases, the minimum penalties for the offenses. However, once the Court has imposed a sentence that provides that some or all of it be suspended with probation or has sentenced a defendant to a term of straight probation, it is the Court, and not the General Assembly, that determines whether the defendant has violated the terms of his or her suspended sentence or probation.
In Hampton v. State, 786 A.2d 375 (R.I. 2001), our Supreme Court succinctly stated:
 "A probation-violation hearing (also referred to as probation-revocation hearing) is not part of the criminal-prosecution process; *Page 11 
therefore, it does not call for the full panoply of rights normally guaranteed to defendants in criminal proceedings. Indeed, it is well established that [a] probation-revocation hearing is not a prosecution but is civil in nature.
 The hearing justice's role during the probation-revocation hearing is to determine only whether in [the hearing justice's] discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status. To establish a probation violation, Rule 32(f) requires only a showing that the defendant failed to keep the peace and remain on good behavior. Furthermore, the state's burden of proof is to adduce reasonably satisfactory evidence of the defendant's violation of one of the terms of his probation, but not evidence establishing a violation beyond a reasonable doubt." Id. at 379 (internal citations and quotations omitted).
Accordingly, a defendant is not presumed innocent nor is the State required to prove the violation claim by proof beyond a reasonable doubt.
If the Court is reasonably satisfied that a defendant's conduct fell short of that required by his or her probationary status, the Court may revoke some or all of that defendant's suspended time or probation.See State v. Brown, 915 A.2d 1279, 1282 (R.I. 2007) (recognizing that "[t]he issue . . . is not the probationer's guilt with respect to the new charges, but rather whether the probationer's `conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status'") (quotingState v. Godette, 751 A.2d 742, 745 (R.I. 2000)); seealso State v. Gautier, 774 A.2d 882, 887 (R.I. 2001) ("It is not the role of the hearing justice to determine the validity of the specific charge that formed the basis of the violation."). Furthermore, although the defendant is entitled to a violation hearing, he or she is not entitled to the same constitutional protections available to a defendant at a trial. See Hampton, 786 A.2d at 379. *Page 12 
In Gautier, our Supreme Court held that the defendant could have been found in violation of his probation "on either of two grounds: first, for `lacking in the [requisite] good behavior expected and required by his probationary status' in connection with the murder of [the victim], and second, for fleeing from a police officer."Gautier, 774 A.2d 882, 887. Furthermore, in acknowledging that there existed additional, unspecified grounds for presenting the Rule 32(f) notice, the Court observed that "[t]he state, which has virtually unfettered discretion in determining when to proceed against a defendant as a probation violator and upon what grounds, could have proceeded against the defendant upon those grounds." Id at n. 2
At a probation violation hearing, the State can rely upon hearsay evidence that would be barred at trial under the confrontation clause of the Constitution. See State v. Pompey,934 A.2d 210, 215 (R.I. 2007) (stating that "hearsay may be admitted on issues central to determining whether a violation has been committed only if the hearing justice first finds that there is good cause for denying confrontation and/or cross-examination") (internal quotations omitted). Indeed, as a practical matter, victims of domestic violence often fail to cooperate with the State at the time of the violation hearing or trial. See id. (noting that alleged victim of domestic violence disturbance did not testify). This may be due to fear; it may be the result of accepting the perpetrator's promise not to re-offend; it might even reflect such a strong desire to reconcile that the victim throws caution to the wind.
The Confrontation Clause would preclude the investigating officer from testifying to a statement made by the victim against a defendant even if the statement would fall within a firmly rooted hearsay exception.See Crawford v. Washington, 541 U.S. 36, 57 (2004). However, at a probation violation hearing, the Court may allow such evidence and find it sufficient to declare a defendant a violator.See Pompey, 934 A.2d at 215 (permitting an officer to testify at a *Page 13 
probation revocation proceeding where the officer "arrived at the scene of a domestic disturbance within minutes of being dispatched, and encountered the complainant, who was `very upset,' spoke in a `high voice,' and was physically shaking[,] [and] also had scratches on her body and her T-shirt was ripped"). The amendment at issue, however, could well preclude the Court from making such a determination. The amendment would thereby interfere with the Court's ability to control its own decision to place a defendant on probation with the requirement that he or she keep the peace and be of good behavior and would interfere with the Court's determination as to whether a defendant's conduct fell beneath that standard.
For these reasons, the Court has grave concerns about whether the amendment when applied prospectively violates the separation of powers provisions of the State and Federal Constitutions. Nonetheless, the Court need not reach that issue since it is clear that when applied retroactively, it does not meet constitutional muster. Likewise, the Court need not reach the other issues raised by the State.
 IV Conclusion
In light of the foregoing, Defendant's Motion to Quash Sentence and Terminate Imprisonment is denied and dismissed. Counsel shall present an appropriate judgment consistent with this Decision.
[1] In accordance with a plea agreement, Defendant was sentenced on the same day in another case, P2-04-1539A.
[2] On March 26, 2003, Defendant was sentenced in P2-02-2747A to three years at the Adult Correctional Institutions, suspended with probation.
[3] At oral argument on the instant motion, the State explained that the charging authority elected not to file misdemeanor charges against Defendant because his sentence on violation exceeded the statutory maximum penalty for simple assault.